IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BONNIE ELIZABETH MILLER, )
)
    **Plaintiff,** )
)
v. ) Case No. CIV-16-919-M
)
COMMISSIONER OF SOCIAL )
SECURITY ADMINISTRATION, )
)
    **Defendant.** )

## **REPORT AND RECOMMENDATION**

Bonnie Miller (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision that she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and Fed. R. Civ. P. 72(b). Doc. 5.

After carefully reviewing the record, the parties' briefs, and the relevant authority, the undersigned recommends an entry of judgment affirming the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

I.  **Administrative determination.**

A.  **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [her] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

B.  **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in [her] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

## C. Relevant findings.

### 1. Administrative Law Judge (ALJ) findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met her burden of proof. AR 85-96; *see* 20 C.F.R. § 404.1520(a)(2); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) had severe "degenerative disc disease, migraine headaches, and obesity";

(2) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[1] (RFC) for sedentary work but could only occasionally "reach, handle, and finger" and must "avoid all hazards and machinery in the workplace and avoid vibration";

(4) could not perform any past relevant work;

(5) was able to perform jobs existing in the national economy; and so,

(6) had not been under a disability, as defined in the Social Security Act, from April 1, 2008—her alleged onset of disability date—through December 31, 2014, the date her insured status expired.

AR 85-96.

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

## 2. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision. *Id.* at 1-6; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). In applying that standard, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### B. Issues for judicial review.

Plaintiff raises three issues and the undersigned reviews them in the following order. First, Plaintiff claims the ALJ improperly rejected the treating physician's opinion, and, relatedly, overinflated the extent of Plaintiff's daily activities. Second, Plaintiff argues the RFC does not account for limitations related to her severe migraine headaches. Third and finally, Plaintiff alleges the ALJ failed to specifically consider whether her severe migraines met or equaled Listing 11.03. Doc. 13, at 5-24.

### C. Whether the ALJ properly rejected the treating physician's opinion.

#### 1. Plaintiff's argument.

The ALJ "considered but assigned no weight" to the treating physician's opinion on two stated grounds: 1) the opinion was inconsistent with a consultative physical therapist's opinion, and 2) the opinion was inconsistent with Plaintiff's activities of daily living. AR 93. According to Plaintiff, the ALJ erred because: 1) his first conclusion was simply inaccurate, 2) his second conclusion relied on an over-inflation of Plaintiff's daily activities, and 3) he failed to consider the physician's "lengthy treating relationship" with Plaintiff. Doc. 13, at 13-25. Plaintiff also argues the treating physician's opinion was consistent with the medical record. *Id.* at 15-18.

#### 2. The treating physician's opinion.

Dr. Ellen Hope, M.D. noted Plaintiff's symptoms included neck pain, headaches, back pain, vertigo, fatigue, and nausea and vomiting, and opined she could sit about four hours in an 8-hour day, stand/walk at least six hours in an 8-hour day, and would require a sit/stand option. AR 433-34. The physician further opined Plaintiff would need unscheduled breaks every thirty-minutes, lasting for approximately ten minutes, and could rarely lift less than ten pounds. *Id.* at 434. The treating physician also believed Plaintiff could rarely look down or turn her head from right to left, could never look up, and

could only occasionally hold her head in a static position. *Id.* at 435. Finally, Dr. Hope opined Plaintiff would likely miss work more than four days per month. *Id.* Dr. Hope believed Plaintiff was "totally restricted and thus unable to function at a productive level of work." *Id.* at 437.

### 3. Analysis.

The undersigned agrees the ALJ's first conclusion—that the treating physician's opinion was inconsistent with the consultative physical therapist's opinion—was inaccurate. However, the undersigned finds the ALJ otherwise properly considered the relevant factors and gave a specific, legitimate reason to reject the opinion.

Through its governing regulations, the SSA tells claimants that, "[g]enerally, we give more weight to medical opinions from your treating sources . . . ." 20 C.F.R. § 404.1527(c)(2). It explains this is so:

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* Binding court precedent underscores the significance of treating source opinion evidence, holding that when an ALJ "evaluat[es] the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-

6

step inquiry, each step of which is analytically distinct." *Krauser*, 638 F.3d at 1330.

At the first step, the ALJ must determine if the opinion "is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* If the ALJ finds the opinion is not entitled to controlling weight, he must then proceed to the second step of the inquiry to "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331 (quotation omitted). However, so long as the ALJ provides a well-reasoned discussion, his failure to "explicitly discuss" all the factors "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

7

Here, the ALJ considered Dr. Ellen Hope's medical opinion but gave it no weight. In part, he found the opinion was inconsistent with a consultative physical therapist's opinion. AR 93. But the physical therapist opined Plaintiff could *not* perform sedentary work and could "stand and walk" only 1.5 hours in an 8-hour day. *Id.* at 446. In other words, the physical therapist found Plaintiff *more* limited than Dr. Hope. Further, the ALJ gave the physical therapist's opinion "partial weight," adopting the opinion Plaintiff could occasionally lift ten pounds, could occasionally reach, handle and finger and should avoid heights, moving machinery, and vibration, but essentially rejecting the physical therapist's opinion Plaintiff could not perform sedentary work and could only sit and walk for 1.5 hours in an 8-hour work day. *Id.* at 92, 446-52. On the only limitations the ALJ adopted, Dr. Hope's opinion was essentially consistent. *Compare id.* at 433-38, *with id.* at 446-52. So, the undersigned finds the ALJ's reliance on perceived inconsistencies between Dr. Hope and the physical therapist's opinions is not a legitimate ground for rejecting the treating physician's opinion.

However, the ALJ also rejected Dr. Hope's opinion because it was inconsistent with Plaintiff's daily activities as she and her husband described them. *Id.* at 93. This was a legitimate ground for rejecting the treating physician's opinion.

8

For example, Plaintiff testified she worked one day a week for several years. *Id.* at 106. She then stated she walked and did strength training two to three days a week, drove her child to and from school every day, drove to the grocery store, and did some household chores. *Id.* at 109, 111-12. Her husband noted Plaintiff did "physical fitness exercise," volunteered at their daughter's school, and ran errands. *Id.* at 273. Plaintiff also prepared meals, cleaned the kitchen, and did the laundry. *Id.* at 274. Finally, Plaintiff's husband noted she shopped online almost daily and regularly visited "school, [the] park, sporting events, [and] church." *Id.* at 276.

Plaintiff testified she suffered back pain and migraines which sometimes limited her ability to perform these activities. *Id.* at 109-12. However, the ALJ found Plaintiff's claims of disabling pain were not entirely credible, and Plaintiff does not challenge that finding here. Instead, she complains the ALJ overinflated her daily activities. Doc. 13, at 21-23. The undersigned disagrees. The ALJ noted Plaintiff: 1) had no limitations with personal care; 2) prepared meals, perform household chores, and run errands; 3) took care of her seven-year old child; 4) drove daily; 5) shopped online; and 6) walked and lifted weights two to three days a week. AR 92. He also noted she worked part time from August 2011 to January 2015. *Id.* As illustrated above, the record supports these findings and the ALJ found Plaintiff's allegations of disabling pain—which she claims encumber those activities—lacked credibility. Under

9

such circumstances, the undersigned cannot find the ALJ overinflated Plaintiff's daily activities.

An ALJ may err if he rejects a treating physician's opinion based on a claimant's ability to perform only "minimal" daily activities. *See, e.g., Santiago v. Colvin*, No. 12-4113-JWL, 2014 WL 896618, at *5 (D. Kan. Mar. 6, 2014) (unpublished order) (concluding the ALJ erred in rejecting treating physician's opinion based on inconsistencies with plaintiff's daily activities where those activities were "only minimal daily activities"). Here however, Plaintiff's activities "are more regular and significant than . . . minimal or sporadic activities" and thus the undersigned finds the ALJ properly relied on the inconsistences between those activities and the treating physician's opinion to reject the latter. *Valles v. Colvin*, No. 14-cv-02019-KMT, 2015 WL 5579573, at *5 (D. Colo. Sept. 23, 2015) (unpublished order) (finding plaintiff's activities, which included "car[ing] for her youngest child, tak[ing] care of her personal needs, assist[ing] with cooking, mak[ing] the bed, driv[ing], clean[ing] the laundry, shop[ping] for groceries every two weeks for about two hours, and attend[ing] church regularly," constituted more than "minimal or sporadic activities" and finding no error in the ALJ's reliance on plaintiff's daily activities as one reason to reject the treating physician's opinion); *Oceguera v. Colvin*, 658 F. App'x 370, 372, 374 (10th Cir. 2016) (affirming the ALJ's decision to reject the treating physician's opinion because it was "inconsistent

10

with the claimant's admitted activities of daily living"); *Packer v. Colvin*, No. CIV-15-655-CG, 2016 WL 6770271, at *5 (W.D. Okla. Nov. 15, 2016) (unpublished op. & order) (noting the ALJ gave the non-treating psychologist's opinion little weight in part because it was inconsistent with plaintiff's daily activities and holding such the "specified reason[]" was a "legitimate bases for the ALJ to reject the . . . opinion").[2]

---

[2] United States Magistrate Judge Shon T. Erwin reached a different conclusion in *Tryon v. Colvin*, No. CIV-14-1140-STE, 2016 WL 347705 (W.D. Okla. Jan. 28, 2016) (unpublished op. and order). There, relying on *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) and *Santiago*, 2014 WL 896618, at *5, the court found the ALJ erred in relying on plaintiff's daily activities to reject a treating physician's opinion. *See Tryon*, 2016 WL 347705, at *2-4. However, the undersigned finds *Tyron* distinguishable on two grounds.

First, in *Tryon*, the ALJ had failed to discuss the alleged inconsistencies between the physician's opinion and the plaintiff's daily activities, *see id.* at *4, and that did not occur in Plaintiff's case. Second, both *McGoffin* and *Santiago* are distinguishable from the instant action. In *McGoffin*, the ALJ expressed "unfounded doubt" as to the authenticity of the treating physician's signature and the Tenth Circuit held the ALJ's credibility judgments "*by themselves* 'do not carry the day and override the medical opinion of a treating physician . . . .'" *McGoffin*, 288 F.3d at 1252 (emphasis added, citation omitted). The ALJ next improperly rejected the treating physician's opinion based on the ALJ's subjective belief it "signified 'a certain advocacy posture.'" *Id.* (citation omitted). These circumstances do not exist here. And, as discussed above, *Santiago* is distinguishable because Plaintiff was performing more than "minimal daily activities." *Supra* § II(C)(3).

In sum, the undersigned finds *Tryon*'s differing conclusion does not prohibit this Court from finding the ALJ properly relied on Plaintiff's daily activities to reject Dr. Hope's opinion. *See Oceguera*, 658 F. App'x at 372 (affirming the ALJ's decision to reject the treating physician's opinion because it was "inconsistent with the claimant's admitted activities of daily living").

11

Finally, the undersigned notes that while the medical record supports Dr. Hope's *diagnosis*, Plaintiff points to no evidence that supports the physician's functional limitation *opinion*. That is, Plaintiff correctly notes she began having headaches in 2008, before and just after she gave birth to her daughter. Doc. 13, at 5 (citing AR 386-87). However, she did not mention severe headaches again until October and November 2010. AR 389-91.

In December 2011, Dr. Hope described Plaintiff as having "occasional migraines that were probably hormonal . . . ." *Id.* at 382. Plaintiff then sought headache treatment with Dr. Douglas Haynes in April 2012. *Id.* at 373. He noted her complaints regarding daily headaches, but stated "[Plaintiff] states she was up to eight Fioricet a day and was experiencing daily headache[s]. Fortunately, about a month ago, she was tapered off of Fioricet and since then her headaches have significantly improved." *Id.* Dr. Haynes documented her symptoms during a headache, including "nausea and phonophobia" and an increase in pain with activity, but noted Plaintiff "states Relpax is now effective in treating her headache symptoms." *Id.*

In September 2012, Plaintiff reported to Dr. Haynes she was "overall . . . feeling better." *Id.* at 369. Then, in January 2013, Dr. Haynes wrote: "Since her last visit, her headaches have been under good control. She does use Relpax with good symptomatic relief. She denies any side effects from it." *Id.* at 367. Dr. Haynes made similar notations in April 2013, *id.* at 365, and in

August 2013, Dr. Haynes stated: "[Plaintiff] states her headaches have been under good control. She does have Relpax 40mg tablets which is effective for acute therapy." *Id.* at 362.

In December 2013, Plaintiff complained of headaches to Dr. Hope again, and stated the Replax "helped, but it seemed to cause nausea." *Id.* at 380. Dr. Hope documented Plaintiff's self-described inability to "look up and down and side to side repetitively" and her question as to "whether she should consider herself disabled." *Id.* Four months later, in April 2014, Plaintiff told Dr. Hope she was having three and four headaches a week. *Id.* at 417. However, Dr. Hope also noted Plaintiff had been taking no more than three Relpax tablets per week (based on the prescription's mislabeling). *Id.*

The medical record establishes Plaintiff had severe migraines, but the undersigned finds no credence in her suggestion the medical record supported Dr. Hope's *opinion* of her functional limitations. The ALJ properly rejected Dr. Hope's opinion based on Plaintiff's self-described daily activities and he was not required to specifically discuss every factor he considered. So, the undersigned finds no reversible error on this ground.

**D. Whether the ALJ committed reversible error in incorporating no limitations in Plaintiff's RFC due to her severe migraines.**

　　**1. Plaintiff's argument.**

The ALJ found Plaintiff had severe migraine headaches. AR 88. After the vocational expert (VE) testified a hypothetical claimant with Plaintiff's RFC could perform several jobs in the national economy, Plaintiff's attorney asked if that same hypothetical claimant could perform those jobs if she would not be able to complete a normal workweek or needed additional breaks due to symptoms and side effects of medication. *Id.* at 117. The VE testified in the negative. *Id.* Referencing this exchange, Plaintiff alleges the ALJ failed to include in her RFC "the most obvious impact of [her] headaches . . . that during her migraines, which occur about 3 times per week, she must absent herself from whatever she is doing until [the] migraine subsides." Doc. 13, at 12. Plaintiff further alleges the RFC, "[a]s written," "anticipates that Plaintiff <u>can</u> function 8-hours per day, 5-days per week (on a 'regular and continuing basis') with the same functional limitations" and argues this "is inconsistent with her testimony and treatment, as well as the uncontradicted opinion of her treating physician, Dr. Hope." *Id.* (emphasis in original).

　　**2. Analysis.**

Three points are fatal to Plaintiff's allegation. First, the ALJ found Plaintiff's testimony regarding disabling pain—and in particular her migraine

14

headache diary—lacked sufficient credibility. AR 92, 94. Plaintiff does not challenge this finding, and thus the ALJ did not error in failing to account for her self-described inability to work on a regular and continuous basis in the RFC. *See, e.g., Hodges v. Colvin*, 568 F. App'x 639, 640 (10th Cir. 2014) (affirming where the ALJ properly found plaintiff less than credible and thus did not include his "subjective complaints" "in the RFC determination"). Second, the ALJ properly rejected the treating physician's opinion regarding Plaintiff's functional limitations. *See supra* § II(C)(3). So, again, the ALJ's failure to include RFC limitations based on that opinion is not reversible error. *See Wofford v. Colvin*, No. CIV-12-307-RAW-KEW, 2013 WL 5376547, at *1, *5 (E.D. Okla. Sept. 25, 2013) (unpublished order) (affirming the ALJ's decision not to include the treating physician's suggested limitations in claimant's RFC where "the ALJ adequately justified the reduced weight afforded [the treating physician's] functional opinion[]"). Third, while the medical record clearly establishes Plaintiff has severe migraines, she cites no evidence (aside from the rejected opinions) which points to any work-related functional limitations not already included in the RFC. *See Hodges*, 568 F. App'x at 641 (rejecting plaintiff's claim the ALJ should have included further limitations in the RFC where plaintiff "does not point to any medical evidence indicating his RFC should be more limited than that found by the ALJ").

### E. Whether the ALJ committed reversible error in failing to specifically discuss whether Plaintiff's severe migraines met or equaled Listing 11.03.

#### 1. Plaintiff's argument.

At step three, the ALJ must determine whether the claimant's severe impairment is "equivalent to a condition listed in the appendix of the relevant disability regulation." *Allman v. Colvin*, 813 F.3d 1326, 1329 n.1 (10th Cir. 2016) (citation and internal quotation marks omitted). The ALJ is required "'to discuss the evidence and explain why he found that a claimant was not disabled . . . .'" *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (citation and internal brackets omitted). According to Plaintiff, the ALJ "generally acknowledged the existence of the 11.00 section of the Listings, [but] he did not provide any specific consideration of Listing 11.03." Doc. 13, at 10 (emphasis omitted).

#### 2. Analysis.

The undersigned finds any error in the ALJ's failure to specifically discuss Listing 11.03—the most appropriate Listing for considering migraine headaches[3]—harmless. The ALJ properly justified his findings at step four.

---

[3] "Although there is no separate listing for migraines, the Commissioner has stated that the most analogous listing is section 11.03, which sets forth criteria for non-convulsive epilepsy." *Becerra v. Colvin*, No. 15-cv-02278-KMT, 2017 WL 1173488, at *3 (D. Colo. Mar. 30, 2017) (unpublished order).

*See supra* § II(C), (D). Because the ALJ's "confirmed findings . . . made elsewhere in the . . . decision confirm the step three determination," the court is not required to remand "for a more thorough discussion of the listings[.]" *Fischer-Ross*, 431 F.3d at 735 (holding the ALJ's failure to make specific findings at step three was harmless error where the ALJ made "confirmed findings at steps four and five" and no reasonable factfinder could disagree that claimant's impairment did not meet or equal a listing at step three).

### III. Recommendation and notice of right to object.

Based on the foregoing, the undersigned recommends an entry of judgment affirming the Commissioner's final decision.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Court Clerk by May 23, 2017, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

17

ENTERED this 3rd day of May, 2017.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE